Dunseth *v.* Wade *et al.*

---

CRAWFORD DUNSETH, plaintiff in error, *v.* STEPHEN J. WADE, JOHN K. LOWRY, and TOWNSEND HILLS, defendants in error.

*Error to Peoria.*

Where goods were shipped by W. at Cincinnati, on board of D.'s steamboat, to be transported to Peoria, at $1 per hundred, under the usual bill of lading, "with privilege of reshipping on any good boat:" *Held*, that the master, by reshipping the goods, did not lessen his liability, but was responsible for the delivery of the goods at Peoria, unless the goods were lost or so injured as to prevent their delivery, by the unavoidable accidents of the river. In such case, if the goods had been reshipped, it would be necessary also to show that they were put on board of a good boat.

Where goods are shipped under the usual bill of lading, the master, to exempt himself from liability, for not delivering them, must prove that he has been prevented from doing so, by unavoidable accidents.

*Semble*, That if a common carrier, in which character steamboats navigating our rivers must be classed, attempts to perform his contract in a manner different from his undertaking, he becomes an insurer for the absolute delivery of the goods, and cannot avail himself of any exceptions made in his behalf in the contract.

THIS cause was tried in the Court below, at the April term, 1839, before the Hon. Thomas Ford, who rendered a judgment for plaintiffs for $209, and costs of suit. The defendant excepted to the judgment of the Court.

W. FRISBY and G. T. METCALF, for the plaintiff in error, cited

1 H. Blac. 298, 359; 3 Taunt. 264; Oliver's Law Summary 292, 360–4.

S. T. LOGAN, for the defendants in error.

LOCKWOOD, Justice, delivered the opinion of the Court:

This was an action of *assumpsit* commenced by Wade, Lowry, and Hills, against Dunseth, for failing to deliver to the plaintiffs below, at Peoria, certain goods belonging to them, which were shipped on board Dunseth's steamboat, called the Indian, then lying at Cincinnati. The defendant pleaded *non assumpsit.* The cause was tried, by consent of the parties, without a jury.

The bill of exceptions contains the following facts. A witness, on the part of the plaintiffs below, testified that he, as agent of Wade, Lowry, and Hills, received the bill of lading hereinafter copied, from the merchants in Cincinnati, who had shipped the goods on board the steamboat of Dunseth, at Cincinnati; that the goods belonged to the plaintiffs below, and never arrived at Peoria. That witness, at a subsequent time, had a conversation with Dunseth, in which he admitted that he had received the goods mentioned in the bill of lading, but said that he did not consider himself liable for the loss or damage of the goods, because, by the terms of the bill of lading, he was entitled to the privilege of reshipping said goods on any good boat; that he had reshipped said goods on the steamboat American, and that the loss happened while the goods were on the said boat American. The witness also testified that the goods lost were of the value of $194,75.

The defendant below having proved the execution of the bill of lading, which was produced on the trial, from the possession of the plaintiffs below, read the same as follows:

" 33 ps. bar Iron, . . 1030
2 bars $\frac{5}{16}$ Bd. & Sq. . 102
"    "    in hoop, . . 82
1    "    8d Nail Iron, 83
1    "    $\frac{5}{8}$ Round, . . 52
1    "    $\frac{1}{2}$ do. . . . 48
1    "    $\frac{3}{8}$ do. . . . 68
20 kegs Lead, . . . 500
90 ps. Castings, . . 1495
—————
3460

LOWRY, WADE & Co.,
Peoria.

" Shipped in good order, and well conditioned, by Balbridge & Co., on board the good steamboat called the Indian, whereof is master for the present voyage, Dunseth, now lying in Ohio river; to say,

Sundries per margin ;
One bar of Iron in dispute, being marked and numbered as in the margin, and are to be delivered in like good order and condition, (the unavoidable accidents of the river only excepted,) at the port of Peoria, unto Lowry, Wade & Co., or assigns, he or they paying freight for the said goods, at the rate of one dollar per hundred. In witness

With privilege of reshipping on any good boat. whereof, the master or clerk of said steamboat, hath affirmed to three bills of lading, all of this tenor and date, one of which being accomplished, the others to stand void. Dated at Cincinnati, the 13th day of July, 1836. S. DUNSETH."

It was also proved by the defendant below, that S. Dunseth, whose signature appears to the foregoing bill of lading, was clerk of the steamboat Indian, at the time the above goods were received on said boat, and at the time of the execution of the bill of lading. The defendant below also proved that the steamboat American was a good boat at the time of the reshipment, and that she (the American) was sunk on her way to Peoria, in the Illinois river, with the plaintiffs' goods on board, by the steamboat Friendship running into her, (the American,) as witness understood, though he had no personal knowledge; and that the pilot of the American, at the time of this accident, was a good pilot, and that the sinking of the American was an accident, as he had heard say, and not occasioned by the negligence of her officers, or the mismanagement of the boat American, as he had also heard said. It was also said, that the boat American was afterwards raised, and most of her loading was saved; and he did not know but all the plaintiffs' goods were saved.

Upon this evidence, the Court below rendered a judgment for the plaintiffs' below. The assignment of errors questions the correctness of the decision. This is a case of first impression in this Court. We have searched for authorities as to the effect of the privilege reserved in the margin of the bill of lading, without success.

The authorities referred to in the brief of the plaintiff in error, have no application to the question arising in this case. In the absence of adjudged cases, within the reach of the Court, we must apply general principles to the facts of the case.

In order to arrive at a just conclusion, it is necessary first to determine the extent of the obligation incurred by the master of the Indian, when he undertook to transport the goods of Wade, Lowry & Co., from Cincinnati to Peoria. The language of the bill of lading is, that the goods were to be delivered at Peoria, to Wade, Lowry & Co., they paying the freight for the goods at $1 per hundred, the unavoidable accidents of the river only excepted. This contract bound Dunseth, the master of the boat, to deliver, from the boat Indian, the goods in question, unless prevented by the unavoidable accidents of the river. What change in the terms of this contract, did the words "with privilege of reshipping on any good boat," written in the margin of the bill of lading, produce? Was the master discharged from all obligation in relation to the car-

riage and delivery of the goods at Peoria, by merely reshipping the goods on board "any good boat"? Clearly not. He was to receive freight on the delivery of the goods at Peoria, for transporting the goods the whole distance. His obligations were consequently coextensive with the reward he was to receive.

He could not charge freight *pro rata*, for the distance he carried the goods, and then leave the owner to be charged for the remainder of the distance, such prices for freight as the conscience of the master of the boat on which the goods might be reshipped, should see fit to demand.

The master having undertaken, for a stipulated reward, to deliver the goods, in good order, in Peoria, was bound to do so, unless he could show that the goods were lost, or so injured as to prevent their delivery, by the unavoidable accidents of the river. The *onus* lay on him, whether he reshipped the goods or not. This proof he undertook to give; but the whole of his evidence of the loss of the goods by unavoidable accident, was hearsay.

Doubtless had this evidence been offered to a jury, it would have been objected to and rejected; but as the Court tried the cause, the whole of the evidence was heard, and that portion disregarded by the judge, which he considered as improper.

Had the cause been tried before a jury, it would have been proper for the plaintiffs below to have moved the Court to instruct the jury to disregard the hearsay testimony; but where the judge tries the case, no such motion is necessary, because it is the duty of the Court to decide the case upon the legal evidence before it.

The legal testimony in the case, was the shipment of the goods of the plaintiff below, on board of the steamboat Indian, under a contract to deliver them at Peoria; that the goods had never been delivered, and that the goods were worth $194,75.

From the loose manner in which the bill of exceptions is drawn, it is doubtful whether the witness of the defendant below, intended to say that he knew that the goods were reshipped on board the American, or whether he meant only to state that, at the time he heard the goods were reshipped, the American was a good boat. Whatever may be the true understanding of this part of the testimony, there is no doubt, that all the witness said in relation to the sinking of the American, by being run into by the steamboat Friendship, is entirely hearsay, as well as the testimony that the accident was not occasioned by the negligence of the officers of the American.

The Court below was consequently justified in disregarding the hearsay testimony, and in giving judgment for the plaintiffs below, on the evidence. Should it be enquired, of what use then was the memorandum written on the margin of the bill of lading, "with privilege of reshipping on any good boat," if when the goods, in pursuance of such privilege, have been reshipped, the master is not

Dunseth *v.* Wade *et al.*

discharged from further responsibility? The answer is two-fold: First, the master of the Indian was to receive freight on delivery, for the whole distance, whether he reshipped the goods or not, and consequently his obligations were coextensive with his reward; and, Secondly, without reserving this privilege, the master of the Indian would have been responsible, after reshipping the goods, even for unavoidable accidents.

If a common carrier, in which character steamboats navigating our rivers must be classed, attempts to perform his contract in a manner different from his undertaking, he becomes an insurer for the absolute delivery of the goods, and cannot avail himself of any exceptions made in his behalf in the contract.

The skill and experience of the master of the boat, the character of the crew, and the staunchness and speed of the boat, may all be taken into consideration by the owner or shipper of goods, in selecting a boat for the carriage of his goods. Having done so, he has a right to require that the contract be fulfilled, in the manner agreed, unless the master of the boat reserves the privilege of reshipping.

And when this reservation is made, it is still incumbent on the master of the boat, in order to discharge himself from his obligations, to show, by legal evidence, not only that the goods were reshipped on a good boat, but that the goods were lost, by the unavoidable accidents of the river. Had the agreement been, that, if the master should reship the goods, he should only receive freight *pro rata*, for the distance the goods had been carried, a different question would have been presented.

In such a case, however, there can be no doubt, that it would have been incumbent on the master, to have forwarded, without delay, to the owners or consignee of the goods, a new bill of lading, so that the owner might have evidence against the master of the boat on which the goods were reshipped.

Without notice of the reshipment of the goods, the owner, in case of non-delivery, would not know on whom to call for redress, nor how to search for his goods. Upon the whole, we are of opinion that the judgment must be affirmed with costs.

*Judgment affirmed.*