IN THE

# SUPREME COURT OF MISSISSIPPI,

AT THE

# OCTOBER TERMS, 1875 AND 1877.

| 58 | 911 |
| 75 | 308 |

## NEW ORLEANS, ST. LOUIS, AND CHICAGO RAILROAD COMPANY v. M. FALER & Co.[1]

1. RAILROAD COMPANY. *Liability for cotton burned on flat-cars. Contract of immunity.*

F. & Co. delivered to the New Orleans, St. Louis, and Chicago Railroad Company a certain number of cotton-bales, to be transported between certain points on the line of that company's road. The cotton was put on flat, open cars, against the remonstrance of the consignors, and while *in transitu* was consumed by fire. Thereupon F. & Co. brought an action to recover damages for the loss sustained by them. The train which was carrying the cotton was made up of both box and flat cars, and although both classes of cars contained cotton, none was burned except that on the flat-cars. The evidence did not show how the cotton was ignited. There was written across the face of the bill of lading these words: "Not responsible for loss or damage by fire or water." *Held*, that, cotton being very inflammable, and, when ignited, difficult to extinguish, it was the duty of the railroad company to have stored F. & Co.'s cotton in box-cars, or in the safest cars in use for the transportation of such goods, and the failure to provide the same was negligence, and renders the company liable for the loss of the cotton, notwithstanding its special contract for exemption from loss by fire.

---

[1] When this case was decided, PEYTON, chief justice, and SIMRALL and TARBELL, associate justices, constituted the court. The failure to report it heretofore resulted from the omission of SIMRALL, J., to mark the opinion "to be reported," which omission was not discovered until recently, when the present court ordered the case to be reported.

2. SAME.   *Common carrier.   Contract against fire.   Effect.*

A railroad company may stipulate with the consignor of goods against liability for loss by fire; but still the company is bound to the performance of all the duties incident to its employment, — as, the exercise of fidelity, skill, and care, — and is required to use the safest approved motive-power, with the best appliances in use to arrest the escape of sparks of fire, and cars so constructed as to afford the greatest protection to the goods received for transportation.

3. SAME.   *Loss of freight.   Contract for immunity.   Liability of carrier.*

Wherever a loss of goods being transported by a railroad company results from a cause against which the company has by a special contract stipulated for immunity, the company is still liable, notwithstanding the special contract, unless it can be acquitted of all blame for the loss.   If the loss be attributable to the omission of the carrier to provide the safest vehicle in use for the transportation of the particular goods lost, or to a failure to do anything that diligence and care would suggest was feasible to have been done, the company is liable, even though it may have made a special contract for immunity against the cause of the loss.

ERROR to the Circuit Court of Copiah County.

Hon. URIAH MILLSAPS, Judge.

The case is sufficiently stated in the opinion of the court.

*Harris & George*, for the plaintiff in error.

It is stated in the case relied upon by counsel for the defendants in error that the American cases settle the point that a common carrier may, by a special agreement, restrict his liability; that, though he may not screen himself from responsibility for his own negligence, he may fairly protect himself against accidents, and especially against accidental fire.   *Mobile & Ohio R. Co. v. Weiner*, 49 Miss. 734.   If the carrier has protected himself by a fairly understood agreement against accidental fire, he throws the burden of proof on the plaintiff to show that the loss was occasioned by the actual negligence of the carrier.   There is no presumption of law which relieves the plaintiff from such proof.   The servants of the railroad company are presumed to be competent and diligent, until the contrary has been shown.

The agreement in this case is fully proven.   It cannot be presumed that a business man did not understand the receipt which he accepted and relied on.   There is nothing to show hurry or confusion.   The indorsement was especially conspicuous.

The judge below found negligence in the use of uncovered flat-cars, without any additional fact save the circumstance that Faler called the attention of the company's agent to that fact. The evidence fails to show how the fire originated, but it does show that, by the construction of the smoke-stack, and having buckets of water on the train, the usual precautions had been taken. The cotton on the flat-cars was protected also by several box-cars in front; and the proof shows that it was impossible for sparks from the locomotive to have ignited the cotton on the flat-cars. If we suppose the fire to have originated from some other cause, there is no evidence of negligence. The judgment of the court below rests upon conjecture altogether.

R. N. Miller, and Potter & Green, for the defendants in error, filed briefs respectively, but they were lost before the record and papers of the case reached the hands of the reporter.

Simrall, J., delivered the opinion of the court.

In October, 1874, Faler & Co. shipped by the New Orleans, St. Louis, and Chicago Railroad Company, from Hazlehurst, thirty-five bales of cotton consigned to their factors at New Orleans. Written across the face of the bill of lading are the words, "Not responsible for loss or damage by fire or water." The cotton was consumed by fire whilst in transitu, and Faler & Co. bring their action to recover damages for the loss sustained. This is an effort by a public common carrier to limit its common-law responsibility.

The privileges which were granted by the State to the railroad companies which lately consolidated into the great corporation known as the New Orleans, St. Louis, and Chicago Railroad Company were to bring into existence public carriers with the capacity and facilities to transport passengers and property promptly, safely, and at reasonable rates. All the powers adequate and necessary to appropriate the property of private owners for the use of the line of the road, to build, equip, and

operate it, have been conferred, in consideration of the benefits of speedy, safe, and cheap transportation.

These corporations owe to the community duties which are *quasi*-public; and all questions (which arise in individual cases) affecting their duties and obligations as public carriers assume the importance of public questions.

· The corporation might justly complain of any interference by the State which would cripple it in the full exercise of its legitimate franchises in the conduct of its business. On the other hand, the corporation ought to be held to a fair and full performance of its duties as a public carrier. These duties were well defined at the time the charters were granted. Of them are these: that goods received for transportation should be safely carried and delivered at the point of destination, and nothing excuses except the act of God (inevitable accident) or the public enemy.

But it was and is permissible to limit this almost absolute responsibility by an exception from liability for those losses which are the result of casualties or accidents, — against which the most prudent cannot always provide, — such as fire, tempests, etc., etc.

A railroad company may stipulate against loss by fire; but such an exemption does not discharge or abate one "jot or tittle" the prudence, skill, and care which the nature of the business imposes. When we use the words "prudence," "skill," "care," it is always in reference to some subject-matter, and the "degree" is measured by the nature of the thing to be done and the instrumentalities employed. A railroad company must employ men educated to the business to manage its locomotives. It must use cars suitable to the character of property which it transports. If one class of goods would be damaged by exposure to the weather, they must be carried under cover.

The duty is to use the cars and other appliances usual and suitable to its business; nor can it by special contract relieve itself from that duty. The law demands that the railroad

company shall use safe machinery, properly constructed vehicles, employ competent agents, and manage the whole with that degree of skill and prudence necessary to the successful prosecution of the business.  *Mobile & Ohio R. Co.* v. *Weiner*, 49 Miss. 732.

In *Smith* v. *Railroad Company*, 12 Allen, 533, 534, the defendant offered as an excuse that the car door, which was broken by the cattle (causing the loss of some of them), was reasonably strong ; but to that the court responded that " it was in the power of the railroad company to secure a car sufficiently strong to resist the struggles of the animals, however unruly." The company " is bound to have one absolutely and actually sufficient."  *Welch* v. *Railroad Co.*, 10 Ohio St. 69 *et seq.*

In *Steinway* v. *Railroad Company*, 43 N. Y. 126, the goods were destroyed by fire communicated by sparks from the chimney of the locomotive.  As in this case, there was an exemption from loss by fire.  The point considered was, whether the company was culpable for not using the safest apparatus to prevent the escape of sparks.  It was laid down as the rule, " that if there was anything lacking in the construction of the engine which sound rules required it should have, it was negligence." The company must adopt the most approved modes of construction and machinery in known use, and also the " best precautions in practical use for securing safety."  So, in *Jackson* v. *Railroad Company*, 31 Iowa, 176, it is said that " ordinary care and prudence require the use of the best appliances known."

Whatever special contract of exemption the carrier may make, he must provide, if the transportation be by water, a seaworthy vessel, properly equipped and furnished ; or, if by land, vehicles safely and properly constructed.  Ang. on Car., sect. 265.  And, more than that, there must be no blame or fault imputable to the carrier in reference to the storage of the goods on the vessel, as in *New Jersey Steam Navigation the Company* v. *Merchants' Bank*, 6 How. (U. S.) 385, where goods were placed too near the chimney, over the boiler-deck, and took fire.  Angell on Carriers, sect. 265, lays down the

rule to be, that there can be no exemption for losses occurring from a defect in the vehicle or mode of conveyance.

The courts have not been uniform in defining the degree of " negligence," whether gross or slight, for which the carrier will be liable when the loss occurs from a cause excepted by special contract. One class of cases holds that the effect of such contract is to relieve the carrier from his public character and responsibility as such, and place him on the footing of a private carrier, under a special engagement with the shipper, and that he is only liable for gross negligence. Another class, looking with jealousy upon anything which relaxes the common-law responsibility of the public carrier, decline to give any larger effect to the special contract than to relieve the carrier from liability as an insurer for safe delivery.

The point made in *Michigan Southern Railroad Company* v. *Heaton*, 37 Ind. 448, was as to the degree of negligence which would charge the carrier for a loss by fire, when that risk was exempted by the bill of lading. The court held that the carrier could no more contract " for a slight degree of negligence than for gross negligence." In *Graham* v. *Davis*, 4 Ohio St. 362, it was held that negligence, whether gross or slight, could not be the subject of a contract. So, *Steinway* v. *Erie Railway Company*, 43 N. Y. 126, holds the carrier liable if there was any negligence on his part, " without regard to any supposed distinctions or degrees of negligence."

These adjudications are of the class of cases which, we think, declare the sound and salutary rule, that whilst the railroad company may, by special agreement with the shipper, stipulate against liability for losses which sometimes happen by casualty or accident to the most prudent men, — such as fire, — nevertheless, as a public carrier, the company is held to the performance of all the duties incident to the employment. Fidelity, prudence, and care are exacted. Safe motive-power, with all the best constructed appliances in practical use to arrest the escape of sparks from the chimney, should be used. Cars should be so constructed as to afford the greatest pro-

tection to goods liable to damage from rains, or easy to ignite from sparks.

At this day the great railroad companies are the chief arteries of the interior commerce of the country. They were incorporated, with their extensive franchises, for the very purpose of subserving the needs of commerce and travel as public carriers. They cannot, in consonance with the great object had in view in their charters, surrender their character of public carriers, and, by contract with individual shippers, assume that of private carriers. They are bound by the law of their creation to accept goods and passengers offered for transportation. They are public carriers and nothing else; nor can they abdicate that character without a violation of their fundamental law.

It appears that the train on which the plaintiff's cotton was shipped was made up of both box and flat cars — five or six of the former, and two of the latter.

It was also in evidence that the plaintiff remonstrated with the depot and shipping agent of the company about putting his cotton on the flat-cars. It was not disclosed how the cotton was ignited. Most probably by sparks from the locomotive. No other cotton was burned except that on the flat-cars. Cotton is very inflammable: easy to ignite, and hard to extinguish when on fire. Ordinary prudence would suggest that it should be stored in cars of such construction as would give the largest measure of security. It is almost certain if the plaintiff's cotton had been placed in a box-car it would not have been consumed. The company had box-cars, which were more secure against fire. Its duty was to provide the safest cars in use for the transportation of goods, according to their quality and liability to special perils.

In holding, therefore, that it was negligence to carry cotton-bales on flat-cars when the defendant had in use safer cars, we follow the doctrines and analogies of those authorities which are approved in *Mobile and Ohio Railroad Company* v. *Weiner*, 49 Miss. 732, and others hereinbefore stated. If it be

negligence not to use the most approved apparatus known to the defendant to prevent the escape of sparks from the chimney of the locomotive, as held in the case reported in 43 N. Y., it cannot be prudence to omit any other precaution (in its control) which it can take for the safety of inflammable goods. The company must be free from negligence.

There is no blame or negligence in carrying lumber, many sorts of barrel freight, and other goods of like character (not apt to take fire from sparks), on flat-cars, whilst it is not prudent to store cotton-bales or such inflammable material on them.

The duty under the law is to carry and deliver *safely*. That duty is not performed if the carrier adopts a vehicle or car for inflammable goods, less safe than another in known common use.

Whatever improvements science and skill have made, and experience has tested and approved, in machinery or vehicles, which contribute to the safety of passengers and property, must, if known to the railroad company, be adopted.

The vast interests of commerce and travel which are intrusted to these public carriers requires that much of them. The large powers and franchises (including that of eminent domain, in appropriating private property to their use) have been granted in consideration of the corresponding benefits and advantages which they afford to the public. It is not exacting too much of them, nor imposing a new burden, that they shall employ care, skill, and prudence proportioned to the magnitude of the interests confided to them, and the perils and dangers peculiar to that mode of transportation.

If the effect of a special contract limiting their liability under the law shall be permitted to relax their duty to the public, and to abate that measure of care, skill, and prudence incident to the employment, then will the door be opened to relieve them from those obligations to shippers which the wisdom of the common law has imposed, and then will the owners of property be subjected to risks which the public good requires should rest upon the company.

The question in every case should be, and is, Has the public carrier acquitted himself of all blame? Can the loss be referred to omission to provide the safest vehicle in use for the particular property? If the loss can be ascribed to a failure to do what diligence and care would suggest was feasible to have been done, then the public carrier cannot shield himself behind an exemption in the bill of lading.

In the case of the *Mobile and Ohio Railroad Company* v. *Weiner, supra*, allusion was made to the great relaxation of the responsibility of the common carrier, induced by a recognition by the British courts of the validity of notices to shippers, which were treated as special contracts. To such mischiefs did the practice lead, that Parliament interposed to arrest the evil. The American courts, after some vacillation, have almost uniformly denied that a common carrier's liability can be limited in that mode. Whilst tolerating a reasonable restriction by special contract, fairly and deliberately assented to, the courts, whose judgments are supported by the soundest reasons and wisest policy, declare also the doctrine that common carriers cannot by contract bargain for an abatement of that degree of care, skill, and prudence which the law imposes.

Judgment affirmed.