CHICAGO, ST. LOUIS AND NEW ORLEANS RAILROAD COMPANY
*v.* MOSS & CO.

1. COMMON CARRIER. *Special contract. Use of flat cars. Negligence.*
   Whether the special contract of a railroad company with a shipper for the carriage of cotton on open or flat cars is a contract against the negligence of the carrier, on the theory that such mode of transporting cotton is *per se* negligence, and may on that ground be avoided by the shipper who sustains a loss of cotton thus being transported. *Quære.*

2. SAME. *Transportation of cotton. Use of flat cars. Special contract. Instruction.*
   In an action against a railroad company for the value of cotton lost by fire while being transported upon the flat cars of the defendant, under a special contract in which the shipper agreed that the cotton might be carried on such cars, the court instructed the jury in behalf of the plaintiff that "it was the duty of the defendant to take due precaution to protect the cotton from loss by fire, and to provide all suitable means and appliances to prevent said cotton from catching fire, and for extinguishing it, if it should catch; and if the cotton was destroyed by fire by reason of defendant's failure to provide such appliances or take such precaution, then the defendant is liable notwithstanding the special contract." It cannot be said that this instruction had the effect to deny the right of the defendant to carry the cotton on flat cars, when the other instructions, those refused as well as those given, indicate that such right of the defendant was not controverted, and the evidence points to the conclusion that the "means and appliances" referred to in the instruction were buckets of water which a rule of the defendant required to be kept on each flat car carrying cotton, but which were not on the cars in this instance.

3. SAME. *Special contract for immunity. Action for damages. Defence. Burden of proof.*
   Where goods, being transported by a common carrier under a special contract by which his common-law liability as an insurer is limited, are lost, and the owner brings an action to recover the value thereof, the defendant, in order to avoid liability therefor, must show not only that the loss resulted from a cause concerning which he had contracted for immunity, but also that he was not guilty of any negligence in respect thereto. The duty of the carrier to prove the absence of negligence on his part arises from the terms of the contract, from the character of his occupation, and from the rule of evidence requiring the facts to be proven by that party in whose knowledge they peculiarly lie.

APPEAL from the Circuit Court of Montgomery County.
Hon. C. H. CAMPBELL, Judge.

Moss & Co. delivered to the Chicago, St. Louis & New Orleans Railroad Company forty-six bales of cotton to be trans-

ported by the latter from Winona, Miss., to New Orleans, La. There was indorsed upon the receipt given Moss by the railroad company a contract in the following language: "In consideration of a reduction from the regular rate of freight on cotton, the shipper or consignor accepts this receipt with the special agreement or understanding that the carrier (the Chicago, St. Louis & New Orleans Railroad Company) shall not be held liable for loss or damage by fire or water, and shall have the right, at its convenience or option, to transport wholly or in part, the cotton described in this receipt, in box cars or flat cars, without incurring liability by reason of such mode of transportation." The cotton was put on flat open cars, and while *en route* to its point of destination was consumed by fire. Moss & Co. brought an action against the railroad company to recover the value of the cotton thus lost. On the trial of the case the following, amongst other instructions, were given for the plaintiffs: " 5. If the jury believe from the evidence that the defendant, being a common carrier of goods for hire, received from the plaintiffs' forty-six bales of cotton to be by said defendant transported and delivered in New Orleans, then it was the duty of said defendant to take due precaution to protect said cotton from loss by fire, and to provide all such suitable means and appliances to prevent said cotton from catching fire, and then for extinguishing it after it should catch; and in considering the question as to whether or not the defendant did this the jury will take into consideration the character of the cotton as whether of a highly inflammable and combustible nature, and its liability to ignite, and if they find that such reasonable precautions were not taken, and the cotton was destroyed by fire, by reason of defendant's failure to provide such appliances, or to take said precaution, then the defendant is liable, notwithstanding any special contract entered into — that if the loss to plaintiffs can be ascribed to a failure to do what diligence and care would suggest was feasible to have been done, then the railroad company cannot shield itself behind a special contract to exempt it from liability."

" 6. If the jury believe from the evidence that the plaintiffs delivered forty-six bales of cotton to the defendant to be by the defendant transported to New Orleans, and that while the cotton was in course of transportation it was destroyed by fire, then the defendant must show by testimony that, not only the fire, but the loss was occasioned without fault or neglect on the part of itself or its agents or servants, and any neglect, however slight, that brings about said loss will prevent the defendant from availing itself of the special contract to escape liability."

Such parts of the evidence and other parts of the instructions, as are considered by the court, are sufficiently indicated in the opinion.   The verdict and judgment were for the plaintiffs, and the defendant appealed.

*W. P. & J. B. Harris*, for the appellant.

The first and principal matter for consideration here is the effect to be given to the special contract introduced in evidence by the plaintiff below.   That contract, in express terms, relieves the carrier from the risk of loss by fire, and in consideration of a reduction from the regular freight rate of fifty cents per bale on the cotton shipped, the shipper agreed that the cotton might be shipped on flat cars, *i.e.*, uncovered cars. The plaintiff testified on the trial that the bearing of the contract was well understood by him to give a positive advantage, as the insurance against fire only cost him twenty-five cents per bale.   He preferred the contract at the reduced rate for flat car transportation.   There was no constraint.   The contract offended no principle of law.   It declares that the carrier may use flat cars " without incurring liability by reason of such mode of transportation."   The vehicle of transportation is, in effect, chosen by the shipper, on account of its economy. The use of the flat uncovered car, in the transportation of cotton, is as old as the railroad in the cotton region.   It is universally employed.   Its risks are understood and estimated. It is the privilege of the shipper to select the vehicle and

direct the mode of transportation.   Lawson on Con. of Car.
23.    It may, therefore, be fairly the subject of con-
tract.    In *Lawrence* v. *Minturn*, 17 How. 100, the court
said : "In this case, the owner of the cargo who has assented
to this mode of shipment (stowage on deck) cannot recover
from the ship or owner on the ground of negligence."   Hut-
chinson on Car. .253, *et seq.* ; *Hauk* v. *Railroad Co.*, 17
Mich. 57 ; 18 Mich. 427 ; 31 Me. 228 ; 45 N. Y. 514 ; Ib. 712 ;
3 Wall. jr., 229 ; 52 Barb. 87.    It is left to the private judg-
ment of business men to decide whether it is better to take
the less expensive method, with an increase of risk, or the
more expensive, with diminished risk.   The question is, there-
fore, whether there is a public policy so sensitive as to take
offence at a contract between the shipper and the carrier, by
which the shipper elects to have transportation by a cheap
vehicle, agreeing to take from the carrier the risk incident to
that mode of transportation.    There are subjects of transpor-
tation, such as live stock, and cotton in the ordinary bale,
which cannot be transported profitably by either the shipper
or the carrier under the common-law liabilities of the
carrier.    The carrier must be relieved of the more expens-
ive methods and of some of the risks to enable him to trans-
port the cattle of the far West to the cities of the East.    Reg-
ular rates must follow common-law risks, and the regular rates
would deter all such shippers.    It subserves vast public inter-
ests, nay, the necessities of business, to allow the shipper and
the carrier to so divide the risk, and so to lessen the expense
of carriage, as to enable the producer to reach distant mar-
kets.    The weight and bulk of the cotton, and the necessity of
making the cost of carriage tolerable by the producer, have
led to contracts by which the risks are divided or lessened, to
enable the carrier to lower his rates.    Whether the use of flat
cars, independent of contract, is negligence or not, is a ques-
tion of fact.    41 Ala. 667.   The case of *Faler* v. *Railroad Co.*,
58 Miss. 911, does not, if it can be adhered to as authority,
govern this.    There was no contract there at all ; certainly no

contract expressly allowing the use of flat cars. The shipper objected to their use. By the contract here, the use of flat cars was taken out, eliminated from the case, as an element of negligence. The contract being valid, and the loss having been occasioned by fire, it came within the excepted risk. Conceding that the contract cannot be construed to exempt the carrier from personal dereliction of duty, when it was shown that the loss was by fire, the burden of proof was on the plaintiff as to negligence. Yet the court below instructed the jury that the burden rested on the carrier. This was error. The effect of introducing limitations of liability by special contract is to put the shipper on proof of negligence in such cases. Hutchinson on Car. 767 ; *Colton* v. *Railroad Co.*, 67 Pa. St. 211 ; *Railroad Co.* v. *Reese*, 10 Wall. 189 ; *Reed* v. *Railroad Co.*, 60 Mo. 203 ; *Cochran* v. *Dennison*, 49 N. Y. 271 ; 46 N. Y. 271 ; 6 Am. & Eng. R. Cas. 349. Again, the court below erred in giving the fifth instruction. The contract being valid, so far as it admitted the use of flat cars, should have had its full effect ; yet the court in this instruction very plainly says to the jury, that some covering, impervious to sparks of fire, should have been employed. He told the jury that the carrier was bound in the given case to employ " all means and appliances to prevent the cotton from catching fire," thus fairly leaving the jury to decide whether covering was one of " all " such appliances. In such a case the court should have qualified this misleading and erroneous instruction in the terms of it. The verdict is one which could have been reached only by holding for naught all the testimony of the defendant, and it must be assumed that the jury placed their verdict on the fair interpretation of this instruction. If the carrier was bound to cover the cotton, this omission shown rendered all the other evidence valueless.

*W. P. Harris*, argued the case orally.

*Calhoon & Green*, for the appellees.

1. This contract is of that class of contracts limiting the liability of common carriers as developed in the common law, and

which arose out of the experience of man from time immemorial. To limit liability of a common carrier means to deprive the public of the rights it is entitled to by law — a waiver of a legal right. While it is true that the courts uphold some of these contracts, they are scanned closely and are not favorites. The field or scope allowed for these contracts is narrow and is confined to casualties or accidents. The limit of their extension, it is believed, will be found to be to allow the carrier to stipulate that it shall not be insurer. It is not permitted that care, diligence, prudence, proper and appropriate machinery and appliances, can be dispensed with by these unilateral contracts. Proper care must be provided, and every means used for the performance of the duties it has assumed and which the public has granted it. This subject has been carefully considered by this court in the cases *M. & O. R. R. Mo.* v. *Weiner*, 49 Mis. 725 ; *N. O. & J. and G. N. R. R.* v. *Foler*, 58 Miss. 915. In the latter case it was held that the shipment of inflammable material like cotton on flat cars was, of itself, negligence, and that it was incompetent to contract against negligence. Hence this contract must be construed as having interpolated after, "shall not be held liable for loss or damage by fire or water," if caused without negligence of the carrier, or, in other words, does not insure against loss by fire or water, and that this is the real meaning is proven further by the last sentence of the contract, that in case the carrier should become liable for any loss or damage thereto the carrier shall have the benefit of any insurance. If there was no liability, under the contract, for loss or damage by fire or water on the part of the carrier, under any circumstances, or, in other words, if the contract was an absolute release from all liability of carrier for loss by fire or water, why stipulate that the carrier was to have benefit of insurance — clearly, this last clause is an indemnity. Hence, on the face of the contract the carrier is liable if loss or damage is caused by negligence of carrier. But the clause invalidating the contract is the carrier "shall have the right at its

convenience or option to transport wholly or in part the cotton described in this receipt in box cars or stock cars or flat cars, without incurring liability by reason of such mode of transportation." This clause is beyond the limit allowed in several particulars, — (1) it violates the duty of the public carrier to provide the best modes of transportation ; (2) it contracts against negligence ; shipment of cotton in box cars is *per se* negligence, *N. O. R. R.* v. *Faler, supra* ; (3) it requires the public to relieve the carrier from liability for damage caused by the means selected by the carrier for transporting. Cases, *supra.* Ang. on Car., sect. 275.

2. Much of appellant's brief is consumed on the burden of proof. The theory contended for here is different from that below, for there the notice was that the defendant would show the loss was by fire and without negligence. It was assumed below that they had to prove both the fire and due diligence and they undertook to prove both. They assumed the burden of proof, and now wish to have the case reversed for what was then our theory in the court below. But is it true that in this case the burden of proof was upon plaintiff to show negligence after the proof of loss by fire was shown? We have seen that the contract should read, shall not be liable for loss or damage by fire or water, if caused without negligence of carrier. This is legally a part of the contract, and it is only with this limitation that it would stand. Hence, when the contract is relied on the defendant must prove the whole of it. The sole effect of it is to relieve from insurance. To prove loss by fire raises the presumption of negligence which must be rebutted. Pierce on Rys., 438 ; Hutchinson on Car., sect. 766. Hence when defendants prove loss by fire it would carry the presumption of negligence which would warrant recovery unless they go further and show that it was caused by no fault of theirs. This case differs from the case in 12 How., where there was no presumption of negligence from the character of the act causing the damage. Also from that in 10 Wall. 189, which was by the act of God. Proof of the loss by the act

of God did not raise any presumption of negligence in carrier because carrier had no connection with cause of loss. In this case it must be borne in mind that destruction by fire carries with it the presumption of negligence, and this is the gist of the instruction. In the case cited from 60 Mo. 203, by opposite counsel, and which was affirmed, this instruction was given: "That it devolved upon the defendant to show, notwithstanding, the exception exempting it from loss by freezing, that the loss did not occur through any fault, want of care, or negligence on its part or the parts of its agents or employees." p. 203. The burden of proof was upon defendant to show no negligence. Hutchinson on Car., sect. 766; 2 Greenl. on Ev., sect. 219. The fifth instruction for plaintiff is correct, (1) because the stipulation in the contract for shipment by flat cars was void, *supra*; (2) because it is the duty of the carrier, if they use flat cars, to provide suitable means and appliances to render the danger as little as possible (tarpaulin as used on steamboats would protect), and in case of fire, to have the means of extinguishing it (Babcocks, for instance, or water-barrels). The sixth instruction is correct for the reason stated *supra* on burden of proof.

*M. Green*, of counsel for the appellees, argued the case orally.

COOPER, J., delivered the opinion of the court.

The question whether a common carrier may, by special contract, secure exemption from his common-law liability as insurer of goods where the loss or injury results from his own negligence, has been differently answered by the courts of the different States. Those of New York, following the English decisions, hold that he may contract for immunity even as against the gross negligence of himself or servants. *Smith v. C. R. R.*, 24 N. Y. 222; *Magnin v. Dismore*, 56 N. Y. 168; *Mynard v. R. R.*, 7 Hun, 399.

In some of the States a distinction is drawn between gross

negligence, as to which protection by contract is not allowed, and slight or ordinary negligence from the effects of which immunity may be gained by agreement.    Hutchinson on Car., sect. 260, and authorities there cited.

In this State it is settled that a contract by which a common carrier stipulates for exemption from liability for losses occurring from his own negligence of any grade is against public policy and void.    *Whitesides* v. *Thurlkill*, 12 Smed. & M. 599 ; *Express Co.* v. *Moon*, 39 Miss. 822 ; *R. R. Co.* v. *Weiner*, 49 Miss. 725 ;  *R. R. Co.* v. *Faler*, 58 Miss. 911.

In *R. R. Co* v. *Faler* it was said that it was negligence *per se* for a railroad company to transport so inflammable a material as cotton on an open, unprotected car.    In that case the shipper had agreed to take upon himself the risk of loss by fire, but had not agreed that the cotton might be carried on open cars.    In this case there was an express contract by which the shipper agreed, in consideration of a reduction in freights, that the cotton might be so transported and that he would carry the risk of loss by fire.    Whether the carriage of cotton on open cars is negligence in the sense that even by contract immunity may not be secured by the carrier against loss, or whether it is only a less safe means of transportation which the carrier may not employ without the assent of the shipper, but by contract with him may acquire the right to use, and free himself from liability for loss arising from such course of shipment where there is no negligence on the part of the carrier, we do not find it now necessary to decide, as this case was tried in the court below upon the theory that the special contract was valid.

The instructions given by the court below on the application of the plaintiffs were objected to by the defendant, and are assigned as error here.

By the fifth instruction for the plaintiffs the court charged the jury that "it was the duty of the defendants to take due precaution to protect the cotton from loss by fire, and to provide all such suitable means and appliances to prevent said cotton from catching fire and then for

extinguishing it if it should catch, and in considering the question as to whether the defendants did this, the jury will take into consideration the character of the cotton as to whether inflammable and combustible, and its liability to ignite, and if they find that such reasonable precautions were not taken, and the cotton was destroyed by fire by reason of defendant's failure to provide such appliances or take such precautions, then 'the defendant is liable, notwithstanding the special contract." Other instructions were given announcing practically the same proposition. It is now argued by the appellant's counsel that the effect of this instruction was to deprive the defendant of the privilege it had acquired to trans port the cotton on open cars, because, as is said, the "appli ances necessary to prevent said cotton from catching fire," necessarily meant some covering impervious to fire. A care- ful examination of the record impresses us with the conviction that this was not the construction put upon these words on the trial in the lower court. It was there assumed that the special contract under which the cotton was being carried was valid, and the contract evidently contemplated a transportation of the cotton on open cars without the protection of covering. The defendant obtained an instruction that it might, by contract with the shipper, acquire the right to carry the cotton on flat cars, and another that " if the plaintiffs agreed with defendant for a consideration, that the defendant might transport the cotton on flat cars, then plaintiffs assumed all the risks to which cotton thus shipped was ordinarily exposed, after due care, caution and protection on the part of the carrier." The court also refused an instruction asked by the plaintiffs, in which it was announced that it was negligence on the part of the carrier to carry the cotton on any other than the safest vehicle in use for carrying the particular property. From these instructions it appears to us that if the plaintiffs had in argument to the jury or otherwise attempted to construe the instruction given for them as requiring the defendant to cover the cotton, an additional and qualifying instruction would

have been asked by the defendants.  It appears that a rule of the defendant required buckets of water to be carried on each flat car loaded with cotton and that when the cotton which was burned near Winona was discovered to be on fire there were no such buckets on the car.  In view of the character of the instructions given, and of this testimony, we must assume that this water was " the appliance " to prevent the firing of the cotton, the absence of which was pointed on by counsel for the plaintiffs.  Viewed in this light, the instruction was not erroneous.

The court, on the application of the plaintiff, also instructed the jury that it devolved on the defendant to prove not only that the loss occurred by the excepted cause under the special contract, but also that such loss by such was without negligence on the part of defendant or its employees.  This is also assigned for error.  Where goods are received for transportation by a common carrier, under a special contract by which his common-law liability as insurer is limited, it is held by a number of courts (in fact by a majority of them), that the carrier, having proved the loss to have occurred by reason of the excepted cause, it then devolves upon the shipper to establish the negligence of the carrier, failing in which he cannot recover.  Such is the rule in the courts of the United States, of Pennsylvania, of New York, Louisiana, Missouri, and probably of other States. *Clark* v. *Barnwall*, 12 How. 279 ; *Transportation Co.* v. *Downer*, 11 Wall. 129 ; *Patterson* v. *Clyde*, 67 Pa. St. 500 ; *Colton* v. *Railroad*, Id. 211 ; *Lamb* v. *Railroad*, 46 N. Y. 271 ; *Cochran* v. *Dismore*, 49 N. Y. 249 ; *Steers* v. *Steamship Co.*, 57 N. Y. 1 ; *Read* v. *Railroad Co.*, 60 Mo. 199 ; *N. O. Ins. Co.* v. *Railroad Co.*, 20 La. An. 302 ; 24 La. An. 100.

On the other hand it is said by Mr. Greenleaf, and it is held in a number of the States, that under such contracts the burden is upon the carrier to show not only the loss by the excepted cause, but also that he himself was free from fault.  2 Greenl. on Ev., sect. 219 ; *Swindler* v. *Hilliard*, 2 Rich. 286 ; *Baker* v. *Brinson*, Id. 201 ; *Graham* v. *Davis*, 4

Ohio St. 362 ; *United States Express Co.* v. *Blackman*, 28 Ohio St. 144 ; *Berry* v. *Cooper*, 28 Ga. 543 ; *Steele* v. *Townsend*, 37 Ala. 247 ; *Grey* v. *Mobile Co.*, 55 Ala. 387 ; *Brown* v. *Adams Express Co.*, 15 W. Va. 812.

And such would seem to be the rule in Connecticut and Illinois. *Harper Bros.* v. *Railroad Co.*, 37 Conn. 272 ; *Dunspeth* v. *Wade*, 3 Ill. 285. The doctrine that the burden of proof under such circumstances is upon the plaintiff to establish negligence first found expression in the courts of the United States in the case of *Clarke* v. *Barnwell*, which was decided by a divided court. The rule there announced has, however, been uniformly adhered to by the courts of the United States and has been. adopted by those of many of the States.

When first announced it was apparently based upon the proposition that by the contract the carrier ceased to be a common carrier and became a simple bailee for hire. In *Lamb* v. *Railroad Co.*, 46 N. Y., Grover, J., in delivering the opinion of the majority of the court, said : " The defendant was exonorated from all liability as carrier for a loss by the destruction of the cotton by fire. Relieved of this responsibility it was liable only, in case it was destroyed, as bailee for hire." In *York Co.* v. *Central Railroad*, 3 Wall. 107, Mr. Justice Field said : " By the special agreement the carrier became in reference to the particular transaction an ordinary bailee and private carrier for hire." But an ordinary bailee or private carrier may, by special contract, regulate the degree of dilligence which shall be required of him. The next step, therefore, taken by common carriers was in the direction of contracting against their negligence or misfeasance as a private carrier might do. That they might do this necessarily and logically followed from the principles announced. But the courts took alarm when they contemplated the results, and denied that a common carrier could by contract exempt himself from losses occurring from his own negligence. To do this it was necessary to decide that by such

contract a common carrier could not divest himself of his character as such and become an ordinary bailee or private carrier for hire. In *Railroad Company* v. *Lockwood* the point was presented, and the court, in deciding the case, said : " It is argued that a common carrier, by entering into a special contract with a party for carrying his goods or person on modified terms, drops his character and becomes an ordinary bailee for hire, and therefore may make any contract he pleases. That is, he may make any contract whatever, because he is bailee, and he is an ordinary bailee because he has made the contract. We are unable to see the soundness of this reasoning. It seems to us more accurate to say that common carriers are such by reason of their occupation, not by virtue of the responsibilities under which they rest. * * * The theory occasionally announced, that a special contract as to the terms and responsibilities of a common carrier changes the nature of the employment is calculated to mislead. The responsibilities of a common carrier may be reduced to those of any ordinary bailee for hire, whilst the nature of his business renders him a common carrier still." In support of this principle the court relies on the case of *Davis* v. *Graham*, 2 Ohio St. ; *Graham* v. *Davis & Co.*, 4 Ohio St. ; *Swindler* v. *Hilliard*, 2 Rich. ; *Baker* v. *Brinson*, 9 Rich., and *Steele* v. *Townsend*, 37 Ala., hereinbefore cited, in each of which cases it was distinctly decided that a common carrier did not, by reason of a special contract, lose his character as such, and because he did not, that the burden remained on him of showing, in case of loss, not only that the loss occurred by reason of the excepted cause, but also that it happened without any fault on his part. As was said in these cases, the law which forbids a common carrier to contract for immunity against loss arising from his own negligence, practically inserts, as if written in the contract after each stipulation for exemption the words, " Provided such loss occurs without any negligence of the carrier or his agents." Any loss, therefore, which occurs in any other manner than by the

excepted cause and without the fault of the carrier, is not within the terms of the contract. It is a familiar rule, both of pleading and evidence, that a half defence is no defence, and this it would seem would cast upon the common carrier the necessity to plead, and to sustain by proof all the facts necessary to his exoneration. If, on the contrary, the rule announced by the Supreme Court of the United States is to govern, and, if as was said in *Railroad Company* v. *Lockwood*, the common carrier does not, by reason of the special contract, become a mere bailee or private carrier, as it was said in *York* v. *Railroad Company* that he did, then the question arises, what degree of negligence is the shipper required to show? If the " responsibility " of the carrier is only that of a bailee or private carrier for hire, it would, it seems, be necessary for the shipper to show such negligence or want of care as would render liable a bailee or private carrier for hire; while on the other hand, if the " nature of his employment " (that of a common carrier) is the test of diligence and care required of him, then it would seem that the plaintiff should recover upon proof of an absence of that care and diligence which is required of a common carrier. In escaping from one difficulty we would thus encounter another equally perplexing. To us it also seems that public policy forbids the further relaxation of the principles of the common law governing common carriers. It is no uncommon thing in this age to see under one management a line of railroads extending from the lakes of the north to the Gulf of Mexico, or from the Atlantic to the Pacific ocean. To hold that a shipper in New York or Chicago shall be required to establish the negligence of the carrier by proof of the circumstances of a fire in California or New Orleans, would in a great number of cases result in a verdict for the carrier, even though there was in fact negligence. In a large majority of cases the facts rest exclusively in the knowledge of the employees, whose names and places of residence are unknown to the shipper. In many cases the witnesses are the employees whose negli-

gence has caused the loss, and if known to the shipper it may be dangerous for him to rest his case upon their testimony, since the natural impulses of mankind would sway them in narrating the circumstances to palliate their fault by stating the occurrence in the most favorable light to themselves. All the authorities hold that it devolves upon the carrier to show the loss to have occurred by the excepted cause. In doing this it will add but little to his burden to show all the attending circumstances, and that the burden rests upon him to do so and disprove his own negligence we think arises from the terms of the contract, from the character of his occupation, and from that rule governing the production of evidence which requires the facts to be proved by that party in whose knowledge they peculiarly lie.

The judgment is affirmed.

