FRED BRENNISEN and Others v. PENNSYLVANIA RAILROAD COMPANY.[1]

January 25, 1907.

Nos. 15,014—(134).

**Negligence of Carrier.**

 In an action for damages to a car of fruit delivered by the defendant to the consignee in a damaged condition, it is *held* that the defendant did not show that it was free from negligence by such clear and satisfactory evidence as to justify this court in setting aside the findings of the trial court.

Action in the municipal court of Minneapolis to recover $450 for the depreciation in value of a car of strawberries while in the possession of defendant as a common carrier. The case was tried before C. L. Smith, J., who found in favor of plaintiffs in the sum of $349.16. From an order denying a motion for a new trial, defendant appealed. Affirmed.

*Savage & Purdy,* for appellant.
*George C. Stiles,* for respondents.

[1]Reported in 110 N. W. 362.

ELLIOTT, J.

Action to recover damages which the plaintiffs sustained by reason of the alleged negligence of the defendant in the transportation of a carload of strawberries. The case was tried by the court without a jury, and judgment ordered for the plaintiffs. The defendant appealed from an order denying the motion for a new trial.

The court found that on May 8, 1905, the plaintiffs delivered to the Atlantic Coast Railway Company, a common carrier, at Mt. Olive, North Carolina, a carload of strawberries, all then in good, sound, merchantable order and shipping condition, and consigned for transportation over the line of the said company as the initial carrier and succeeding lines, including that of the defendant, the Pennsylvania Railroad Company, to the city of Buffalo, New York, for delivery to the plaintiff at that point. The Atlantic Coast Railway Company and other connecting lines extended to Sunbury, Pennsylvania, and there connected with the Pennsylvania Railroad Company, which extended from there to Buffalo. The car of strawberries in question was, in the usual course of business between common carriers by rail, transported with ordinary care over the line of the initial carrier and connecting carriers to Sunbury, where it was delivered to defendant in good condition and by it accepted for carriage to Buffalo. The defendant, in transporting the berries from Sunbury to Buffalo, carelessly and negligently conducted itself as a common carrier, and the berries, by reason thereof and while in the possession and under the control of the defendant as such common carrier, became overheated and mouldy, and were thereby damaged in the sum of $349.16.

The assignments of error challenge the correctness of the findings (a) that the berries were delivered to the defendant in good condition; (b) that the defendant, in transporting the berries, negligently and carelessly conducted itself as a common carrier; (c) that the berries became overheated and mouldy while in the possession of the defendant; and (d) that the berries decayed and were damaged by reason of the negligence of the defendant, and in handling and caring for the same while on the way from Sunbury to Buffalo.

The findings to which the appellant objects are really the ultimate conclusions to which the court arrived from the consideration of the undisputed facts, and the question is whether these conclusions are

justifiable.  It appeared that the berries were delivered to the initial carrier at Mt. Olive, N. C., in good condition on May 8, 1905; that they were placed in a refrigerator car, which was attached to the train which left Mt. Olive at 4:53 p. m. of that day, and that after passing through the hands of various connecting carriers the car was delivered to and accepted by the defendant and carried to Buffalo, where the berries were delivered to the respondent in bad condition.  This made a prima facie case against the defendant and cast the burden upon it to show that the damages did not result from any cause for which it was legally responsible.  The rule is settled in this state and requires no further discussion.  Fockens v. U. S. Express Co., 99 Minn. 404, 109 N. W. 834, and cases there cited.  That this is the prevailing rule in other states, see Chicago v. Moss, 60 Miss. 1003, 45 Am. 428; Jones v. St. Louis, 115 Mo. App. 232, 91 S. W. 158; Walter v. Alabama, 142 Ala. 474, 39 South. 87; Hutchinson, Car. (3d Ed.) § 1354, where the authorities are fully cited.

The appellant contends that there is no presumption of negligence when the damage results from the natural process of decay, and that the evidence showed that it did all that could be demanded of it in the care of the fruit.

The rule which throws upon the last carrier the burden of freeing itself from responsibility rests upon grounds of general convenience and public policy, and places no unreasonable burden upon it.  It is true that the presumption, which arises out of common experience and observation, that things once shown to exist in a particular state are presumed to continue in that condition, has little weight when applied to perishable goods, which are known to be subject to inevitable decay.  The time element here becomes of primary importance. . But the process of decay may be retarded or hastened by the acts of the carrier, and there is no reason why the burden should not rest upon it to show that it exercised due care under all the circumstances.  The methods of handling and transporting fruit are well understood, and carriers accept freight for transportation with the understanding and expectation that they will observe proper care, as that is understood by the shippers and carriers of such articles.  Experience shows that perishable fruit, when properly handled, can be carried from the Southern states to the Northern markets in good condition.  The carriers assert

their ability to do this, and fix their freight charges at rates which enable them to provide proper modern cars and expedite their progress, in order that the fruit may reach its destination before the process of decay has injured or destroyed its value. Carriers are not insurers in such cases; but each one is charged with the duty of exercising ordinary care to protect the fruit from injury while it is in its charge, and this duty requires the carrier to use such care in order to prevent the fruit from decaying, as well as from being damaged by other means. What that duty requires in any particular case must be determined from the circumstances and conditions, the nature of the goods, the obligations imposed by the customs and usages of the particular business, and the terms of the contract of shipment.

The appellant contends that the carrier is not under an absolute duty to ice cars. It depends upon the circumstances. It is required to use proper care for the protection and preservation of the property which it accepts for transportation, and, when a failure to ice the cars would amount to want of such care, it would be an act of negligence. As said in Merchants v. Cornforth, 3 Colo. 280, 25 Am. 757: "When a common carrier accepts for transportation in the winter season to ship half across the continent delicate fruits, the character of his employment, independent of any contract, clearly implies that he will ship them in such cars and exercise such diligence as may be reasonably necessary for their safe passage to their destination. Having failed to do this, he cannot escape liability." There can be no question but that, under the circumstances of this case, a failure to properly ice the cars would render the carrier liable for damages resulting thereby to the fruit. See New York v. Cromwell, 98 Va. 227, 35 S. E. 444, 49 L. R. A. 462, 81 Am. St. 722; Popham v. Barnard, 77 Mo. App. 619; Wing v. New York, 1 Hilt. 235; Beard v. Illinois, 79 Iowa, 518, 44 N. W. 800, 7 L. R. A. 280, 18 Am. St. 381. "Undoubtedly, under modern methods, in the case of carriers by rail, the rule would extend to proper refrigeration according to the established custom." Hutchinson, Car. (3d Ed.) § 505. The law thus throws upon the carrier the burden of showing a state of circumstances which accounts for the damage to the merchandise and frees it from liability. The trial court found that the appellant had not shown that the damage to the straw-

berries in question was not caused by some act of negligence on its part.

It appeared that a daily "berry train" left Mt. Olive each day for the North, and that the car in question was attached to the "berry train" which left that station at 4:53 p. m. on May 8. In the usual course of events this car would have been delivered to the Pennsylvania Railroad Company at Sunbury some time on May 10. The appellant's witness testified that "fast freight on the berry train from the South arrived at Sunbury on May 11 at 10:43 p. m., and at that time the North Central delivered it at Sunbury to the Pennsylvania Railroad Co." The witness did not testify that the car in question was attached to the train which arrived at that time, and, as a train of that description arrived each day, the trial court thought that the appellant had failed to show when the car was delivered to it at Sunbury. There is some force in the suggestion that the witness may have told the exact truth with reference to the arrival of the berry train on May 11, and yet the car in question may have arrived on the corresponding train which arrived at Sunbury about the same hour on the previous day. The conductor who took the train at Sunbury testified that his train left the station on the early morning of May 12 and that it contained the car in question. The evidence certainly does not preclude the possibility that the car arrived at Sunbury on May 10, when it was due in the regular course of transportation, and through accident or design was held there until it was started North in the early morning of May 12. The appellant should have shown by clear and satisfactory evidence just when the car came into its possession, and not left the matter to inference from such general statements. The car arrived at Buffalo the evening of May 12, and was delivered to the consignees the next morning. It does not appear how much, if any, ice was in the bunkers when the car reached Buffalo, or when it was delivered. It is possible that the damage to the berries may have resulted from the neglect of the appellant to keep the car properly iced after its arrival at Buffalo while awaiting delivery to the respondent. It may have resulted from the defective condition of the ventilators, doors, traps, pipes, or other openings in the car during the time it was in the possession of the appellant. The appellant should have shown the condition of the car with reference to such matters, and thus pre-

cluded the inference which the court drew from the absence of such evidence. In this state of the record, we cannot say that the court erred in finding that the defendant had not sustained the burden of showing a state of circumstances which accounted for the damages on some other theory than that of its negligence.

The order is therefore affirmed.