# R. E. WHITE v. MINNEAPOLIS & RAINY RIVER RAILWAY COMPANY.[1]

### May 27, 1910.

### Nos. 16,595—(111).

**Negligence of defendant as common carrier.**

Defendant, although operating a meagerly equipped railway, assumed the duties of a common carrier of freight and passengers, and is liable for injuries caused by its negligence in the performance of its duties.

**Carrier of freight — delay — change of temperature.**

A carrier is not an insurer against damages to freight from changes in temperature, unless the circumstances in which the transportation is undertaken impose upon the carrier that obligation; but if, after acceptance of

[1] Reported in 126 N. W. 533.

the freight, its transportation is delayed, the carrier must use reasonable care to protect it during the delay.

**Same — evidence.**

The evidence fairly presented questions of fact for the jury, and, taking the charge as an entirety, the jury were properly instructed by the court.

Action in the district court for Itasca county to recover $1,795 damages claimed to have been sustained by defendant's negligence in holding certain goods, consisting of a carload of vegetables, for eight days before shipment and in failing to transport expeditiously plaintiff and some sixty-five men in his employ. The answer admitted the receipt of certain property for shipment, but denied that it agreed to ship the same immediately; that whatever delay occurred in shipment was caused by extraordinary circumstances over which it had no control; that a portion of defendant's line became submerged and frozen over, so that it was impossible for it to operate its trains for two or three days, and it was compelled to construct a line around a certain swamp because of high water; that it gave due notice of the conditions under which it would transport the goods, among which was the condition that it would not be responsible for unusual delays and that it acted with due care in transporting the property. Defendant further alleged that it offered to transport plaintiff's men to the point where its line was blockaded and transfer them to a train on the other side, which offer the plaintiff refused, and that thereupon defendant offered to take the men to its own camps at the point where its line of railway was being repaired and to employ and maintain them until such time as the line could be re-opened for continuous operation, all of which plaintiff refused. The reply was a general denial. The case was tried before Wright, J., and a jury which returned a verdict in favor of plaintiff for $868.40.

The court's charge in reference to an act of God was as follows: "Now in relation to the act of God or inevitable accident, I will charge you that by the term 'act of God' is meant superhuman, something beyond the power of man to foresee and guard against. It is synonymous with inevitable accident—something that cannot

be anticipated or resisted. And for losses occurring by any of these means a common carrier is not liable, provided he has not been guilty of any want of ordinary and reasonable care to guard against such losses. A common carrier is bound to use reasonable care and diligence to prevent loss or injury to goods intrusted to it by what are termed acts of God or inevitable accidents. That is, such care and diligence as ordinarily prudent men usually exercise towards their own property, under like circumstances. And if the common carrier does not use such care and diligence and loss or damage results therefrom, he is liable therefor." From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*R. J. Powell,* for appellant.

*W. E. Rowe,* for respondent.

O'BRIEN, J.

On November 29, 1905, plaintiff delivered to defendant for carriage a carload of vegetables. The vegetables were in an ordinary box car belonging to a connecting company, and at the time of the delivery were transferred from the tracks of that company to defendant's yard at Deer River. On the same day plaintiff had assembled a large crew of men at Deer River, for whom and his general camp supplies he desired passage to a point upon defendant's line of road where he was about to commence logging operations. About this time a portion of defendant's track crossing a swamp, or what is known in local parlance as a "muskeg," became submerged, ice formed above the rails, and traffic was suspended until a temporary track was constructed around the swamp. This occupied four days, and when the vegetables arrived at the point of destination they were found to be frozen. Plaintiff's first cause of action was for the value of such portion of the vegetables as were destroyed by freezing. By the second cause of action plaintiff sought to recover the wages paid the crew of men compelled to remain idle at Deer River and the cost of the board and lodging furnished them during that period. The jury gave plaintiff a verdict.

The complaint alleged the defendant was a railway corporation

engaged in the carriage and transportation of freight and passengers for hire. The answer admitted this allegation, so that, while it is quite apparent from the record that the defendant company controls a rather meagerly equipped railway, it must, under the pleadings, be held to the responsibilities of a common carrier.

The plaintiff introduced evidence to show that the freight was unconditionally delivered by him to the defendant for transportation, while the defendant claimed it fully informed the plaintiff of the sinking of its track, and received the freight upon condition that it would be required to transport it only when its roadway was repaired sufficiently to enable it to operate trains upon it, and that it did not undertake to care for the perishable freight in the meantime. There was testimony that the temperature lowered during the time the freight was awaiting transportation, and plaintiff made some attempt, by maintaining an oil stove in the car, to keep the vegetables from freezing, so that under all of the evidence it became a question for the jury to say what the contract was and whether or not the defendant carried out its undertakings.

The defendant insists that the sinking of its track was an overwhelming and unexpected occurrence which it could not prevent, and that it was therefore relieved from responsibility by a catastrophe which is to be attributed to the act of God. The plaintiff, upon the other hand, claimed that the track was submerged because of the insufficiency of the roadbed supporting it. The court correctly instructed the jury as to the character of a catastrophe which is to be attributed to the act of God, and, while we greatly doubt that the evidence in this case would support a finding that the sinking of defendant's track was without fault or negligence upon its part, that question is not before us, because of the adverse finding upon that point necessarily implied by the verdict of the jury.

Defendant assigns as error that portion of the charge in which it is stated that the defendant became an insurer of the freight intrusted to it from the time it was received, and that it was its duty to deliver the property to the plaintiff at the point of destination in as good condition as it was when received. This is a correct statement of abstract law, but, as applied to this case, would, if standing alone,

be so insufficient as to necessarily be held erroneous. A railway, by its contract to safely carry, does not insure perishable freight against the effect of temperature encountered by it during the period ordinarily required for its transportation, unless the circumstances under which the contract of carriage is made are such as to imply an undertaking to that extent on the part of the carrier. Brennisen v. Pennsylvania R. Co., 100 Minn. 102, 110 N. W. 362.

And this would be particularly true in such a case as this, where the assumption would be that the contract was to haul the property in the car transferred to defendant's yard. Therefore, if this carload of vegetables had been promptly transported, we would have difficulty in sustaining the verdict, even though the vegetables were frozen during transit. But the car remained in the exposed yards for four days, during all of which time defendant must be held to have had possession of it and its contents, and, while the evidence shows that plaintiff took some steps to keep the vegetables from freezing, this did not relieve the defendant from its duty to use reasonable care to protect the freight it had accepted. The court correctly instructed the jury as to defendant's duties during this delay, and, taken as a whole, the charge was free from prejudicial error, particularly in view of the fact that no inconsistency in it was called to the attention of the court during the trial.

With reference to the second cause of action the court instructed the jury that it was the duty of defendant to transport the plaintiff and his men within a reasonable time, and that if the defendant negligently delayed doing so the plaintiff was entitled to recover the damages which he sustained by reason of such delay. The rule for computing such damages was not stated in the charge, but evidence was received as to the aggregate wages paid the men and the amount paid for their board and lodging during this time. That, we think, was the correct rule, and the verdict rendered appears to be within an amount to be so arrived at.

The evidence as to the payment by plaintiff of the freight charges, and of conversations with defendant's agent in charge of its business at the place of shipment, was properly received.

Order affirmed.