[No. 30936. Department One. August 17, 1949.]

ANGELO LAVAGETTO et al., Respondents, v. RAILWAY EXPRESS AGENCY, INC., Appellant.[1]

[1]Reported in 209 P. (2d) 371.

*Cannon, McKevitt & Fraser,* for appellant.

*Harrison M. Berkey* and *Robertson & Smith,* for respondents.

BEALS, J.—Plaintiffs Angelo Lavagetto and Frank T. Lavagetto, copartners doing business as "Angelo's Flowers" in the city of Spokane, instituted this action against Railway Express Agency, Inc., a foreign corporation engaged in the business of carrying merchandise for hire, including in their complaint certain allegations hereinafter referred to, and demanding judgment against the defendant for $743.72, by way of damages occasioned by the freezing of a shipment of twelve boxes of azalea plants, which plaintiffs had purchased at Lynden, Whatcom county, Washington, and which defendant transported, for hire, to Spokane.

The seller at Lynden delivered the plants to the defendant Thursday, October 24, 1946, for shipment to plaintiffs at their Spokane address. The complaint alleged that the defendant accepted the plants for shipment and delivered them to plaintiffs at their Spokane office Monday, October 28, 1946. Plaintiffs immediately opened the boxes and discovered that the plants were frozen.

The complaint further alleged that the freezing of the plants was the result of carelessness and negligence on the part of the defendant in failing to protect the plants from cold during shipment, and demanded judgment against defendant as above set forth.

Defendant filed its answer admitting the delivery of the plants to its agent at Lynden for shipment, denying that the plants were then in good condition and free from frost, denying all negligence on its part, and that plaintiffs had suffered damage because of any negligence on the part of defendant.

By way of an affirmative defense, the defendant alleged that, if the plants were damaged en route to, or at Spokane, the damage was incident to the ordinary risks of transportation, which risks were assumed by the plaintiffs.

By their reply, plaintiffs denied the affirmative allegations contained in defendant's answer.

The action was tried to the court, sitting without a jury, and resulted in the entry of findings of fact and conclusion of law in favor of the plaintiffs, followed by a judgment in plaintiffs' favor and against defendant for $830.53, by way of damages which the court found plaintiffs had suffered due to the negligence of the defendant.

From this judgment, defendant has appealed, assigning error upon two of the court's findings, and the conclusion of law; upon the refusal of the trial court to enter judgment in favor of appellant; upon the court's ruling denying appellant's motion for dismissal of the action with prejudice; and upon the entry of judgment against appellant.

There is no dispute concerning the basic facts. The twelve boxes of azaleas were packed by the shipper at Lynden and, at that time, the plants were in good condition and free from frost. The plants were properly packed in cases approximately six feet in length and two feet in width. A small amount of dirt was left on the roots and they were covered with moistened peat moss. The plants were fastened to the boxes with cleats, and excelsior was placed over the leafy end. On each of the boxes appeared the following

stencil: "Rush. Perishable. Keep from frost and heat." This stencil was placed on the boxes by the shipper and, later, at the station in Lynden, appellant's agent placed a sticker on each box, bearing the legend: "Keep from frost and heat."

At the time of shipment at Lynden, the temperature was between forty and sixty degrees above zero. Appellant's agent at Lynden was informed that the plants were azaleas, and the express receipt given so indicates. The plants were moved by truck from Lynden to Bellingham, where they were placed on a Seattle train, whence they were forwarded to Spokane. From the evidence, it appears that the plants were shipped in a standard railroad express car, in which were steam pipes, heat being available.

The shipment arrived in Spokane at about nine o'clock Sunday forenoon, October 27th. Appellant's witnesses testified that the boxes were removed from the train and placed in a steam-heated, brick and concrete "terminal building" or warehouse, across the street from the station. The unloading of the plants and placing them in the building consumed about one-half hour. No person who was in the warehouse during the evening or night of October 27th, or the early morning of October 28th, testified concerning the temperature in the building at those times. Testimony was introduced by appellant to the effect that the temperature in the building was maintained at fifty degrees. There was also testimony to the effect that the building was warm in the late afternoon of the 27th and on the morning of the 28th.

During October 27th, the temperature at Spokane varied from forty-three to twenty-four degrees above zero. Just what proportion of this time the temperature was below thirty-two degrees does not appear.

The plants were delivered to respondents between nine and ten o'clock in the forenoon, Monday, October 28th, in a truck hired by appellant. According to testimony by appellant's witnesses, it required fifteen minutes to load the plants on the truck, about the same time to deliver them at

respondents' place of business, and ten minutes to unload the shipment, and, at this time, the temperature was about forty degrees. The plants were then placed in respondents' store, where the temperature was at least sixty-five degrees.

Respondents immediately unpacked the plants and discovered that they had been frozen. The express company was at once notified of this fact, and respondents made every attempt to salvage any plants that could be revived, some salvage having been accomplished.

An agent of appellant inspected the plants, appellant admitted that they had been frozen, and that respondents had suffered loss in the amount which they alleged. Appellant, however, denied all liability for the damage.

From the evidence, it appears that the temperature in Spokane, Monday, October 28th, the day the plants were delivered, ranged from nineteen to forty degrees, the lower temperature prevailing during the early morning hours.

Evidence was introduced to the effect that azalea plants would freeze if exposed to a temperature below thirty degrees for any appreciable length of time.

The brick and concrete building or warehouse, in which the plants were placed upon their arrival at Spokane, was not particularly described by any witness. We do not know how large the building was, how many rooms it contained, whether or not all portions of the building were maintained at the same temperature, or what that temperature was during Sunday and Sunday night, October 27th. Appellant's witnesses testified generally that the temperature was maintained at fifty degrees, but whether this temperature was consistently maintained at the times referred to is not disclosed by the evidence.

From an exhibit introduced in evidence, consisting of a daily temperature record kept by the Spokane station of the United States weather bureau, it appears that the temperature at Spokane ranged from twenty-seven degrees above zero at one o'clock a. m., October 27th, to forty-one degrees at noon, falling to twenty-six degrees at midnight. Thereafter, the temperature steadily declined to twenty-one de-

grees at seven o'clock a. m. the following day. Witnesses testified that, on Monday morning, October 28th, the temperature ranged from seventeen or nineteen degrees in the early morning to forty degrees later on in the day. There can be no question but that the temperature Sunday night and Monday morning was considerably below freezing.

The trial court's findings Nos. 5 and 6, upon which appellant assigns error, read as follows:

"(5)  That said shipment was an intrastate shipment, the defendant being both receiving and delivering carrier; that said plants were received in good condition and delivered to the plaintiffs in a frozen condition; that said damage was due to the negligence of the defendant during the period of transportation, or while in the care of the defendant at Spokane, Washington; that defendant's express car and warehouse or storage room were equipped with steam heat which was available for use by defendant's employees and agents to prevent said plants from freezing.

"(6)  That as a result of the negligence of the defendant, plaintiffs were damaged in the sum of $743.72, which sum represents the cost price of the frozen plants."

The shipment here in question was, of course, an intrastate operation. Appellant argues, first, that, by its tariffs filed with the public service commission, it was not required to furnish heated cars for the carriage of perishable merchandise. It is admitted that the plants were received by appellant in good condition, in boxes labeled as above stated, and that they were delivered to respondents frozen.

█   Appellant called as a witness its acting general agent in Spokane, who had been in appellant's employ over thirty years. During the course of the testimony of this witness, the following occurred:

"Q. [By appellant's counsel.] Now, Mr. Hatcher, during that month of October, 1946, was there anything in the express company's classification or tariffs which provided for service in heated cars or trucks? A. No, sir; not to my knowledge. Q. Nothing in the tariffs under which that shipment moved that would require heated cars or trucks? A. No, sir."

The witness further testified that the plants were shipped in the type of car ordinarily used, at the time of the trans-

action, for transportation of merchandise similar to that which is the subject matter of this action.

The only testimony introduced by appellant concerning the tariffs which it had filed with the state public service commission was that of the witness above quoted. This testimony is insufficient to prove any matter contained in the tariffs filed by appellant. *Williams v. Pickwick-Greyhound Lines,* 15 La. App. 344, 131 So. 860.

Appellant vigorously contends that the trial court erred in entering the judgment appealed from, because, at common law, no duty rested upon appellant to heat express cars (it appears that heat was available in this instance); that the nature of the goods shipped was responsible for the damage suffered by respondents, and that the latter assumed the risk when they ordered shipment of merchandise subject to damage by freezing, during the month of October.

In this connection, appellant cites the case of *W. H. Blodget Co. v. New York Central R. Co.* (1927), 261 Mass. 365, 159 N. E. 45, 55 A. L. R. 900, and the authorities cited by the court in its opinion. The subject matter of the litigation was an interstate shipment of celery, made during the winter months, the celery having been frozen in transit. The court held that, because it appeared that tariffs filed by the carrier did not provide that heat should be furnished during transit, the defendant was not liable. The court continued by holding that there was no duty at common law to furnish heat. In support of its conclusion, the court cited, *inter alia, McGovern v. Ann Arbor R. Co.* (1917), 165 Wis. 525, 162 N. W. 668, which concerned an interstate shipment of apples, made during the month of December. It appeared that the bill of lading issued to the shipper included "O. R." (owner's risk). The inference may be drawn from the opinion that, but for these words, the court would have found against the carrier. Other cases cited in the *Blodget Co.* case, *supra,* may be distinguished upon the facts.

Appellant cites the decision of the supreme court of Minnesota, in the case of *White v. Minneapolis & Rainy River Ry. Co.,* 111 Minn. 167, 126 N. W. 533, wherein that

court considered questions concerning the liability of a railroad company for damages to a carload of vegetables delivered to it for shipment. Because of defects in the defendant's track, the shipment was delayed and, when delivered, had suffered damage from freezing. The case had been tried to a jury, which returned a verdict in favor of the plaintiff. The defendant appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial. The supreme court affirmed the order appealed from, and, in the course of the opinion, said:

"Defendant assigns as error that portion of the charge in which it is stated that the defendant became an insurer of the freight intrusted to it from the time it was received, and that it was its duty to deliver the property to the plaintiff at the point of destination in as good condition as it was when received. This is a correct statement of abstract law, but, as applied to this case, would, if standing alone, be so insufficient as to necessarily be held erroneous. A railway, by its contract to safely carry, does not insure perishable freight against the effect of temperature encountered by it during the period ordinarily required for its transportation, unless the circumstances under which the contract of carriage is made are such as to imply an undertaking to that extent on the part of the carrier. *Brennisen v. Pennsylvania R. Co.,* 100 Minn. 102, 110 N. W. 362.

"And this would be particularly true in such a case as this, where the assumption would be that the contract was to haul the property in the car transferred to defendant's yard. Therefore, if this carload of vegetables had been promptly transported, we would have difficulty in sustaining the verdict, even though the vegetables were frozen during transit. But the car remained in the exposed yards for four days, during all of which time defendant must be held to have had possession of it and its contents, and, while the evidence shows that plaintiff took some steps to keep the vegetables from freezing, this did not relieve the defendant from its duty to use reasonable care to protect the freight it had accepted."

The court cited its prior decision in the case of *Brennisen v. Pennsylvania R. Co.,* 100 Minn. 102, 110 N. W. 362, in which the court affirmed an order of the trial court denying the defendant's motion for a new trial, made after the trial

court had rendered a judgment in favor of the plaintiff in an action for damages based upon the defendant's alleged negligence in transporting a carload of fruit. In the course of the opinion, the court said:

"The appellant contends that the carrier is not under an absolute duty to ice cars. It depends upon the circumstances. It is required to use proper care for the protection and preservation of the property which it accepts for transportation, and, when a failure to ice the cars would amount to want of such care, it would be an act of negligence."

It should be noted that, in both cases last above referred to, the court upheld judgments against the respective carriers.

In the case of *Merchants' Dispatch & Transp. Co. v. Cornforth,* 3 Colo. 280, 283, 25 Am. Rep. 757, the court said:

"When a common carrier accepts for transportation in the winter season, to ship half across the continent, delicate fruits, the character of his employment, independent of any contract, clearly implies that he will ship them in such cars and exercise such diligence as may be reasonably necessary for their safe passage to their destination."

Appellant also relies upon the case of *Swetland v. Boston & Albany R. R. Co.* (1869), 102 Mass. 276, in which the court apparently exonerated the carrier from liability for damage on account of the freezing of apples which were transported, for the reason that the freezing was held to be an act of God. The court also expressed the view that the shipper assumed some responsibility for shipping apples during December, when extreme cold would be a manifest risk.

In the case of *Ledoux v. Railway Express Agency,* 113 Vt. 480, 35 A. (2d) 665, an action for damages to plants, which were frozen while being transported by the defendant from Massachusetts to Vermont, the court said:

"The common law rule as to the liability of common carriers has been somewhat modified by Federal laws. As now generally recognized and accepted, the law as to such liability is that such carrier is liable for loss or damage, unless caused by the act of God, the public enemies, the fault of the shipper, acts of public authority, the inherent nature of the property, or some cause against which the carrier has

lawfully contracted. In speaking of this extraordinary liability of a common carrier, it should be constantly kept in mind that, while it is usual to use the term 'negligence' in speaking of it, the 'prudent man' rule as commonly understood does not apply thereto. All that is necessary to establish prima facie liability is to show the goods were delivered to the carrier in good condition and when delivered by the carrier they were in bad condition. Upon such a showing the carrier is presumed to be at fault unless he shows that the damage resulted from some of the causes above specified. . . .

"In the case at bar the findings show the plants to have been in good condition when received by the defendant and when delivered by it the goods were worthless. We have seen that if we assume that the carrier was not obligated to heat the car in which the plants were transported, a fact which we do not decide, the damage to the plants remains unexplained. The findings show that the plaintiff made out a prima facie case. The defendant having failed to introduce evidence to meet this it follows from what we have hereinbefore stated that it was error for the court to enter a judgment for the defendant."

The shipment of plants was, of course, an interstate shipment and, as the Vermont court observed in its opinion:

"The rights of the parties depend wholly upon the Federal statutes, the bill of lading, in this case referred to as 'the express receipt,' and the rules of the common law, as accepted and applied in the Federal Courts."

The court also noted that

"The express receipt and the tariff schedules are brought into the findings only by reference to the number or letter marking them as exhibits. This is not sufficient to bring the facts stated therein before us. The findings can not be supplemented in that way."

The supreme court reversed the judgment and entered judgment for the plaintiff. Of course, we do not know how the supreme court of Vermont would have decided the case had the tariff schedules been properly before it.

In 4 R. C. L. 683, § 157, appears the following text:

"To determine just what kind of a car must be employed by a carrier in the transportation of a particular shipment the nature of the goods to be carried must be considered.

. . . Fruit, and some other perishable articles, must be carried with expedition and protection from frost. So, throughout, the carrier must attend to the character of the goods he transports, and this obligation may at times, as in the case of fruits and other perishable goods, require him to provide refrigerator cars, or cars with heating or icing facilities."

In 9 Am. Jur. 843, § 698, the rule is stated as follows:

"It is not questioned that a carrier is liable as an insurer of express matter which it transports as a common carrier under a contract of carriage made directly with the consignor."

Apparently, appellant contends that, from the evidence, the freezing of the plants could have occurred only while they were in the express car, and that appellant was under no duty to protect the plants from cold during the journey to Spokane.

Under the circumstances shown by the evidence, the duty rested upon appellant to protect the plants from freezing in the express car; but, the plants may well have been frozen during the period they were in the express warehouse at Spokane. Appellant's responsibility in regard to protection of the shipment extended equally through that period.

In the case of *Dohrmann Hotel Supply Co. v. Owl Transfer & Storage Co.*, 19 Wn. (2d) 522, 143 P. (2d) 441, 149 A. L. R. 1108, we said:

"It may be admitted that this court has adopted what may be termed the general rule, that the liability of a carrier as such continues after the goods received by it for transportation have arrived at their destination and until the consignee has been notified of their arrival and has had a reasonable time and opportunity to call for and take them away."

The case last cited is not here in point, but the foregoing quotation from the opinion is pertinent.

Appellant introduced testimony concerning the degree of heat maintained in the express warehouse, but this testimony is not convincing. An employee of appellant tes-

tified that the warehouse was "warm" when he left it Sunday evening, and that it was also "warm" when he opened the building the next morning. The witness did not state the hour when he left the building Sunday. The decided fall in temperature Sunday evening and night and Monday morning is significant, and it is reasonable to suppose that, if the plants had been frozen while in the express car and then remained in a building at a temperature of fifty degrees from Sunday morning to Monday morning, they would have thawed. Respondent Frank T. Lavagetto testified that, when the boxes were opened, there was ice throughout the inside of the boxes.

■ Appellant argues that the damage to the plants occurred because of their sensitivity to cold, and, further, that it is not responsible for the damage to the plants, because of certain conditions on the bill of lading delivered to the shipper at Lynden. The labels placed upon the boxes by the shipper and by appellant's agent are also important.

In this connection, the following text, found in 4 R. C. L. 729, § 201, is pertinent:

". . . Thus, while it is generally held that where goods of a perishable nature are injured or practically destroyed by a sudden and unexpected frost, or from some other cause of a like nature, the carrier is not liable, in the absence of a showing of negligence on its part, yet if transportation is being carried on at a season of the year and in a locality when a freezing spell is, in the nature of things, probable, the carrier will usually be held liable for such a loss or injury, since common prudence would ordinarily require it to anticipate such weather conditions as were probable, and to provide against them by sheltering the goods."

In the same volume, § 372, p. 916:

"When goods are damaged in the hands of the carrier a presumption arises that the damage was due to its negligence, and the burden of proof is upon it to show that it was free from negligence, or that, notwithstanding its negligence, the damage occurred without its fault; that is, that its negligence did not contribute to the damage. Accordingly the mere proof of delivery of the goods to the carrier in good order, and of their arrival at the place of destination

in bad order, makes out a prima facie case against the carrier, so that if no explanation is given as to how the injury occurred, the carrier may be held responsible."

To have protected the plants from freezing, it would have been necessary only to have kept them in a place where the temperature was above thirty-two degrees. We are not here concerned with mere damage by cold, but actual freezing.

Appellant argues that, if the temperature in the express car was so low as to endanger the plants, turning on the heat which was available, by the person in charge of the car, might have been dangerous to other goods being transported. It is difficult to believe that a temperature of forty degrees or thereabouts would have been injurious to any merchandise that did not require refrigeration. And, evidently, appellant's agents were of the opinion that a temperature of fifty degrees, which they testified was maintained at the terminal express warehouse, would not be injurious to any article stored therein.

Examination of the record and of the authorities cited by appellant and by respondents, convinces us that the trial court properly decided the case in respondents' favor, and the judgment appealed from is affirmed.

JEFFERS, STEINERT, MALLERY, and HILL, JJ., concur.